Filed 3/20/13  P. v. Lomas CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO JAVIER LOMAS,<br><br>    Defendant and Appellant. | H038068<br>(Santa Clara County<br>Super. Ct. No. BB945131) |

## I.  INTRODUCTION

In March 2011, defendant Francisco Javier Lomas pleaded no contest to inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)),[1] and possession for sale of methamphetamine (former Health & Saf. Code, § 11378).  He also admitted that he had a prior conviction involving a controlled substance (Health & Saf. Code, § 11370.2), and that he had two prior strikes (former §§ 667, subds. (b)-(i), 1170.12).  In August 2011, after the trial court struck one of defendant's two strikes, the court sentenced him to 12 years four months in prison.  The court granted defendant 804 days of custody credits, consisting of 536 actual days plus 268 days conduct credit under section 4019.

On appeal, defendant contends that he is entitled to additional conduct credit under the October 2011 version of section 4019.  For reasons that we will explain, we conclude that defendant is not entitled to additional conduct credit.

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In December 2009, the victim reported to police that defendant had kicked her, stomped on her, punched her on the mouth, and slapped her before leaving the residence that night.[2] The victim, who was the mother of defendant's child and who had been living with defendant for two years, had a cut on her lip. The victim consented to a search of the residence, where the police found two plastic bags containing 146 grams of a substance later determined to be crystal methamphetamine. The police also found more than $54,000 in cash, including $4,875 on defendant when he was located and arrested a few hours later. Further, the police found a cell phone containing a picture of a motorcycle and a text message reading, " 'give me 2 ozs and it's yours.' "

In March 2010, defendant was charged by first amended complaint with assault with a deadly weapon or by means of force likely to produce great bodily injury (former § 245, subd. (a)(1); count 1), inflicting corporal injury on a cohabitant (§ 273.5, subd. (a); count 2), and possession for sale of methamphetamine (former Health & Saf. Code, § 11378; count 3). The complaint further alleged that he personally inflicted great bodily injury on the victim (§ 12022.7), that he had a prior conviction for violating Health and Safety Code section 11378 (Health & Saf. Code, § 11370.2), that he had two prior serious felony convictions and two prior strikes (former §§ 667, subds. (a), (b)-(i), 1170.12), and that he had served two prior prison terms (§ 667.5, subd. (b)).

In March 2011, defendant pleaded no contest to count 2, inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)), and to count 3, possession for sale of methamphetamine (former Health & Saf. Code, § 11378). He also admitted that he had a prior conviction for violating Health and Safety Code section 11378 (Health & Saf. Code, § 11370.2), and that he had two prior strikes (former §§ 667, subds. (b)-(i), 1170.12).

---

[2] The facts are taken from the probation report, which was based on a report by the Mountain View Police Department.

Defendant entered the pleas with the understanding that the remaining count and enhancements would be dismissed or stricken, that he would be eligible for probation if his anticipated *Romero* motion[3] was granted, and that a separate case against him would be dismissed.

Defendant subsequently filed a written *Romero* motion and the prosecution filed written opposition.

On August 22, 2011, the trial court granted defendant's *Romero* motion in part and struck one of defendant's two strikes. The court then sentenced defendant to 12 years four months in prison. The court granted defendant 804 days of custody credits, consisting of 536 actual days plus 268 days conduct credit. The remaining count and allegations were dismissed or stricken.

Defendant filed a notice of appeal on May 25, 2012, after this court granted his application for relief from default for failure to timely file a notice of appeal.

### III.    DISCUSSION

Defendant contends that his conduct credit should be calculated pursuant to the current version of section 4019, which was operative after he was sentenced in August 2011, and that, under the current version, he is entitled 536 days conduct credit instead of the 268 days awarded by the court. Although he acknowledges that the current version of section 4019 "provides that it is applicable solely to cases where the offenses were committed *on or after* October 1, 2011" (italics added), defendant contends in his opening brief that the equal protection clauses of the state and federal Constitutions require that the current version be applied to him. In a footnote in his opening brief, defendant acknowledges that *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*) is adverse to his position. He states that "the *Brown* decision is not yet final" and that he "raises this issue to preserve it in the event of modification or rehearing in *Brown*."

---

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

The Attorney General contends that defendant's claim for additional presentence custody credit is barred by section 1237.1 because he failed to raise the claim below. The Attorney General further contends that, based on *Brown*, *supra*, 54 Cal.4th 314, as well as *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*), and *People v. Kennedy* (2012) 209 Cal.App.4th 385 (*Kennedy*), defendant's equal protection claim fails and he is not entitled to additional conduct credit.

In reply, defendant acknowledges that *Brown* is "dispositive" of his equal protection claim under the California Constitution but he "still contends that the prospective only application" of the current version of section 4019 violates the federal equal protection clause.

We will assume, without deciding, that section 1237.1, which generally precludes a defendant from raising a purported error in the calculation of presentence custody credits for the first time on appeal, does not apply where, as here, the defendant's claim of error is not based on a purported clerical or mathematical error by the trial court. (See *People v. Delgado* (2012) 210 Cal.App.4th 761.) We nevertheless conclude that defendant is not entitled to additional conduct credit.

The current version of section 4019 generally provides that a defendant may earn conduct credit at a rate of two days for every two-day period of actual custody. (§ 4019, subds. (b), (c) & (f).) However, as defendant acknowledges, the current version of section 4019 states that the conduct credit rate "shall apply prospectively and shall apply to prisoners who are confined to a county jail [or other local facility] for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).) In this case, defendant committed his crimes and was sentenced *prior* to October 1, 2011. Thus the October 2011 version of section 4019, which provides for prospective application, does not apply to defendant. (§ 4019, subd. (h); *Brown*, *supra*,

4

54 Cal.4th at p. 322, fn. 11; *Ellis*, *supra*, 207 Cal.App.4th at p. 1550; *Kennedy*, supra, 209 Cal.App.4th at pp. 395-396.)

We are not persuaded by defendant's argument that the federal equal protection clause requires that the October 2011 version of section 4019 be applied to him.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]" (*Brown*, *supra*, 54 Cal.4th at p. 328.)

We find *Brown* instructive on the equal protection issue raised by defendant in this case. In *Brown*, the California Supreme Court held that a former version of section 4019, effective January 25, 2010, applied prospectively, and that the equal protection clauses of the state and federal Constitutions did not require retroactive application. (*Brown*, *supra*, 54 Cal.4th at pp. 318, 328.) In addressing the equal protection issue, the court explained that "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after [the January 2010 version of] section 4019 took effect are not similarly situated necessarily follows." (*Brown*, *supra*, at pp. 328-329.) On this point, the California Supreme Court found *In re Strick* (1983) 148 Cal.App.3d 906 (*Strick*), "persuasive" and quoted from that decision as follows: " 'The obvious purpose of the new section,' . . . 'is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison.' [Citation.] '[T]his incentive purpose has no meaning if an

5

inmate is unaware of it. The very concept demands prospective application.' [Citation.] 'Thus, inmates were only similarly situated with respect to the purpose of [the new law] on [its effective date], when they were all aware that it was in effect and could choose to modify their behavior accordingly.' [Citation.]" (*Brown*, *supra*, at p. 329.)

Subsequently, in *People v. Lara* (2012) 54 Cal.4th 896 (*Lara*), which was decided after defendant filed his opening brief in this appeal, the California Supreme Court rejected the contention that the prospective application of the October 2011 version of section 4019 denied the defendant equal protection under the state and federal Constitutions. (*Lara*, *supra*, at p. 906, fn. 9.) Citing *Brown*, the California Supreme Court in *Lara* explained that prisoners who serve their pretrial detention before the effective date of a law increasing conduct credits, and those who serve their detention thereafter, "are not similarly situated with respect to the law's purpose." (*Lara*, *supra*, at p. 906, fn. 9.)

Thereafter, the Court of Appeal in *Ellis* cited *Lara*, and similarly concluded that *Brown*'s holding with respect to the January 2010 version of section 4019 also applies to the October 2011 version and that the prospective-only application of the October 2011 version does not violate equal protection. (*Ellis*, *supra*, 207 Cal.App.4th at pp. 1548, 1552 ["We can find no reason *Brown*'s conclusions and holding with respect to the January 25, 2010, amendment should not apply with equal force to the October 1, 2011, amendment"]; see also *Kennedy*, supra, 209 Cal.App.4th at p. 397 ["the reasoning of *Brown* applies with equal force to the prospective-only application of the current version of section 4019" ]; but see *People v. Verba* (2012) 210 Cal.App.4th 991, 995-996.)

In this case, we similarly determine that defendant is not entitled to additional conduct credit under the October 2011 version of section 4019 by virtue of state or federal equal protection principles. (See *Auto Equity Sales, Inc*. v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

## IV. DISPOSITION

The judgment is affirmed.

 

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.